CC-2001-350                                                                1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>        Peticionario<br><br>                v.<br><br>Luis A. Valdés Medina,<br>Víctor L. Trinidad Muñiz<br>Joe Caraballo Maldonado<br>Alejandro Osorio Hernández<br>    Acusados-Recurridos | Certiorari<br><br>2001 TSPR 167<br><br>155 DPR \_\_\_\_ |

Número del Caso: CC-2001-350


Fecha: 4/diciembre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Juez Ponente:
                        Hon. Jorge Segarra Olivero


Oficina del Procurador General:
                        Hon. Roberto J. Sánchez Ramos
                        Procurador General

Abogados de la Parte Recurida:
                        Lcdo. Rafael E. Rodríguez Rivera
                        Lcdo. Manuel A. Rodríguez Banchs

                        Lcda. Carmen A. Rodríguez Maldonado
                        Sociedad para Asistencia Legal


Materia: Habeas Corpus


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**El Pueblo de Puerto Rico**

   **Peticionario**

          **vs.**                    **CC-2001-350        CERTIORARI**

**Luis A. Valdés Medina,**
**Víctor L. Trinidad Muñiz**
**Joe Caraballo Maldonado**
**Alejandro Osorio Hernández**

   Acusados-recurridos

        **Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LOPEZ**

        **San Juan, Puerto Rico, a 4 de diciembre de 2001**

        **Contra Joe Caraballo Maldonado, Luis A. Valdés Medina y Alejandro Osorio Hernández se determinó causa probable para arresto por infracciones al Artículo 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401, tras éstos alegadamente haber cometido --cada uno por separado-- conducta violatoria de la referida disposición legal. Contra Víctor Trinidad Muñiz, se determinó causa probable para arresto por supuesta infracción al Artículo 171 del Código Penal, 33 L.P.R.A. sec. 4277. <u>Ninguno de los imputados pudo satisfacer la fianza que les fuera</u>**

impuesta, razón por la cual fueron ingresados en una institución

penal.[1]

        Cabe señalar que, para esa fecha estaba en vigor la Orden

Administrativa Núm. 209 del Centro Judicial de San Juan.

Mediante la misma, el Juez Administrador de dicho Centro

Judicial había dispuesto que, a partir del 1ro de agosto de 2000,

las conferencias con antelación a la vista preliminar no habrían

de celebrarse en las instalaciones del tribunal. Contrario a

la práctica prevaleciente antes de la vigencia de la susodicha

orden, a partir de ese momento, la Sociedad para Asistencia

Legal tendría que coordinar con la Administración de Corrección

una fecha hábil para llevar a cabo el proceso de entrevista y

calificación de los imputados, quienes ya no podrían ser

llevados al tribunal para dicho propósito.

        Llegada la fecha para la cual se había señalado en cada

caso la celebración de la vista preliminar[2], los imputados no

fueron llevados al tribunal como tampoco compareció abogado

alguno que los representara[3]; en vista de ello, además de fijar

---

[1] La determinación de causa probable para arresto contra los imputados así como su ingreso en prisión se dio en las siguientes fechas: contra Luis A. Valdés Medina, el 17 de agosto de 2000; contra Joe Caraballo Maldonado, el 19 de agosto de 2000; contra Víctor M. Trinidad Muñiz, el 23 de agosto de 2000; y, contra Alejandro Osorio Hernández, el 18 de agosto de 2000.

[2] La vista preliminar de Luis A. Valdés Medina fue señalada para el 6 de septiembre; la de Víctor M. Trinidad Muñiz, para el 8 de septiembre; tanto la vista preliminar de Joe Caraballo Maldonado como la de Alejandro Osorio Hernández fueron señaladas para el 12 del mismo mes.

[3] No podemos determinar con certeza si el imputado Joe Caraballo Maldonado estuvo, o no, presente en su primera vista preliminar. Lo cierto es que no hubo abogado que lo representara.

las vistas para fecha posterior, el tribunal ordenó a la Sociedad para Asistencia Legal que evaluara a los imputados para que determinara si habría de asumir su representación legal. No obstante, llegado el momento, las vistas tuvieron que ser pospuestas, nuevamente, por las mismas razones que motivaron las suspensiones anteriores, entiéndase, por la incomparecencia tanto de los imputados como de abogado alguno que los representara. Así, el tribunal fijó, por tercera ocasión, nuevas fechas para la celebración de las vistas y reiteró la orden dirigida a la Sociedad para Asistencia Legal.[4] Sin embargo, el mismo cuadro de incomparecencia produjo que   --por tercera ocasión-- las vistas no pudieran celebrarse.[5]

Entretanto, el 27 de septiembre de 2000, los imputados, representados por la Corporación de Acción Civil y Educación, presentaron una petición de Hábeas Corpus. Adujeron que, sin que mediara justa causa para ello, llevaban detenidos en prisión un periodo en exceso del término dispuesto por la Regla 64(n)(5) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R 64(n)(5), por lo que su detención era contraria a derecho. Solicitaron al tribunal que ordenara su excarcelación así

---

[4] **En su Escrito para Mostrar Causa, la Sociedad para la Asistencia Legal sostiene que ninguna de esas órdenes le fue notificada.**

[5] **Surge del expediente que el imputado Víctor M. Trinidad Muñiz compareció solo a su tercer señalamiento de vista preliminar. Se desconoce si la incomparecencia de los imputados a la celebración de las vistas obedeció a que éstos, estando en el tribunal, no fueron llevados a sala o si --más bien-- estuvo**

como la desestimación de las denuncias que operaban en su contra.

Celebrada la vista correspondiente, el Tribunal de Primera Instancia, Sala Superior de San Juan emitió --en corte abierta-- una resolución mediante la cual acogió la petición presentada por los imputados. El referido foro entendió "que no exist[ía] justa causa para no haber celebrado la vista preliminar y que el Tribunal pudo haber sido más diligente en la designación de abogados de oficio y ha excedido el término en más de 35 a 40 días", por lo que desestimó las denuncias y ordenó su excarcelación.

El Procurador General interpuso petición de certiorari ante el Tribunal de Circuito de Apelaciones. Luego de haber concedido al foro a quo un término para que emitiera resolución fundamentada y aclaratoria del dictamen contenido en la minuta recurrida, el tribunal apelativo intermedio confirmó la decisión del tribunal de instancia.[6] Determinó que, si bien las incomparecencias de los imputados-recurridos no le eran atribuibles al ministerio público, tampoco podían

---

motivada porque éstos no fueron transportados al tribunal por la Administración de Corrección.

[6] En la referida "Resolución en cumplimiento de orden" emitida por el Tribunal de Primera Instancia, dicho foro especificó que las denuncias contra los imputados se habían desestimado al amparo de lo dispuesto en la Regla 64(n)(5) de Procedimiento Criminal, luego de que éstos hubiesen estado bajo arresto durante los siguientes términos de tiempo: Luis A. Valdés Medina, 46 días; Víctor L. Trinidad Muñiz, 40 días; y Joe Caraballo Maldonado, 44 días. Nada se especifica sobre Alejandro Osorio Hernández, pero éste fue ingresado en prisión el 18 de agosto de 2000 y, el 2 de octubre, se ordenó su excarcelación por lo que calculamos que permaneció recluido un periodo de 45 días. Días después, el 10 de octubre, se desestimó la denuncia en su contra.

adjudicársele a los imputados, quienes estaban confinados sin representación legal; sostuvo --al igual que el foro recurrido-- que la tardanza en la celebración de las vistas era atribuible al Estado al no actuar diligentemente en la designación de representación legal a los recurridos. Concluyó, finalmente, que la situación de hechos ante su consideración reflejaba una clara violación del derecho a juicio rápido de los imputados por lo que era procedente la desestimación de los cargos que operaban en su contra.

Inconforme con esta determinación, el Procurador General acudió ante este Tribunal. Sostuvo que erró el Tribunal de Circuito de Apelaciones al:

> ...resolver que procedía decretar la desestimación de las denuncias al amparo de la Regla 64(n)(5) de Procedimiento Criminal, a pesar de que la dilación en la celebración de la vista preliminar no era imputable en modo alguno al Ministerio Público, sino que obedecía a una situación estructural en el sistema de justicia criminal, no intencional ni opresiva hacia los imputados recurridos.

Examinada la solicitud de certiorari, el 4 de junio de 2001, le concedimos término a los imputados-recurridos para que mostraran causa por la cual no debíamos expedir el auto solicitado y dictar Sentencia revocatoria de la resolución emitida por el Tribunal de Circuito de Apelaciones. Con el beneficio de su comparecencia, procedemos a resolver.

I

El derecho a un juicio rápido que le asiste a todo imputado de delito está consagrado --de manera general-- en el Artículo

II, Sec. 11 de nuestra Constitución. Pueblo v. Candelaria Vargas, res. el 18 de junio de 1999, 99 TSPR 96; Pueblo v. Rivera Tirado, 117 D.P.R. 419 (1986); Pueblo v. Opio Opio, 104 D.P.R. 165 (1975). El alcance del mismo está trazado en las disposiciones de la Regla 64(n) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 64(n), en la cual se establecen ciertos términos que rigen las etapas del periodo concebido entre el arresto del ciudadano hasta el momento de su juicio, los cuales términos el legislador consideró constitucionalmente razonables para salvaguardar dicho mandato constitucional. Dentro de este mismo marco de razonabilidad, este Tribunal ha incorporado términos adicionales adecuados para regir aquellas etapas del procedimiento que no están contempladas en la referida regla. Pueblo v. Cartagena Fuentes, res. el 11 de octubre de 2000, 2000 TSPR 150; Pueblo v. Rivera Rodríguez, res. el 29 de febrero de 2000, 2000 TSPR 34; Pueblo v. Santa Cruz Bacardí, res. el 22 de septiembre de 1999, 99 TSPR 144.

En reiteradas ocasiones, hemos expresado que este derecho cobra vida propia desde el momento mismo en que un juez determina causa probable para arrestar, citar o detener a un ciudadano por la comisión de un delito imputado. Es decir, esta protección constitucional se activa cuando se pone en movimiento el mecanismo procesal, que puede culminar en una convicción, cuyo efecto legal es obligar a la persona imputada a responder por la comisión del delito que se le atribuye. Pueblo v. Cartagena, ante; Pueblo v. Miró González, 133 D.P.R. 813, 821 (1993).

Conocido es, además, que en virtud de este derecho se promueve un interés de naturaleza dual. Por un lado, se procura proteger al acusado contra su detención opresiva; se minimizan sus ansiedades y preocupaciones; y se reducen las posibilidades de que su defensa se afecte. Pueblo v. Rivera Tirado, ante. Por otro lado, el derecho a juicio rápido responde asimismo a las exigencias sociales de enjuiciar con prontitud a quienes son acusados de violentar sus leyes. Pueblo v. Miró, ante.

En estricta concordancia con ello, es que la Regla 64(n) de Procedimiento Criminal, ante, pauta los términos que rigen las etapas de la cadena procesal acusatoria, los cuales corren simultáneamente teniendo, como punto de partida, el momento del arresto o detención del imputado, para la presentación de la acusación así como para la celebración de la vista preliminar cuando se trata de delitos graves; como es sabido, la situación del imputado es el factor que determina cuál término habrá de aplicarse: si está sumariado, el de treinta (30); si prestó fianza, el de sesenta (60) días. Pueblo v. Cartagena, ante.

En lo pertinente al caso ante nuestra consideración, la referida Regla dispone que:

> La moción para desestimar la acusación o la denuncia, o cualquier cargo de las mismas, sólo podrá basarse en uno o más de los siguientes fundamentos:
>
> [...]
>
> (n) Que existen una o varias de las siguientes circunstancias, a no ser que se demuestre justa causa para la demora o a menos que la demora para someter el caso a juicio se deba a la solicitud del acusado o a su consentimiento:
>
> [...]

(5) Que la persona estuvo detenida en la cárcel por un total de treinta (30) días después de su arresto sin que se le hubiere celebrado la vista preliminar en los casos en que deba celebrarse.

Como se advierte, el texto antes transcrito reconoce instancias en las cuales dichos términos pueden ser ampliados, a saber: la existencia de justa causa para la demora o la tardanza motivada o consentida por el imputado. Sin dudas, este condicionamiento es necesario, y constitucionalmente válido, Pueblo v. Rivera Arroyo, 120 D.P.R. 114 (1987), pues tal como lo reflejan las experiencias que conforman ese ámbito de nuestro acervo jurídico, cada reclamo de violación al derecho de juicio rápido emana de un escenario recreado por circunstancias propias e individuales. *Ibid*. En consideración a ello, para evaluar este tipo de reclamo, hemos establecido un enfoque pragmático que reconcilia este fundamental derecho con la dinámica y la naturaleza que le son inherentes permitiendo así la ponderación de todos los intereses envueltos. Pueblo v. Ramos Alvarez, 118 D.P.R. 782 (1987); Pueblo v. Santiago Agricourt, 108 D.P.R. 612 (1979).

Sabido es que "juicio rápido" es un concepto constitucional cuyo contenido no está del todo determinado; es, en parte, variable y flexible, capaz de ajustarse a las exigencias de cada caso. Véase: Pueblo v. Arcelay Galán, 102 D.P.R. 409 (1974). De ahí que "[l]a determinación de lo que constituye justa causa bajo la Regla 64(n) de las de Procedimiento Criminal es por necesidad un problema de definición a realizarse caso a caso", *Ibid*, a la pág. 417, y

a la luz de la totalidad de las circunstancias. Pueblo v. Santa

Cruz Bacardí, ante. Véase Olga Elena Resumil, *Reglamentando la*

*Institución de la Vista Preliminar,* 70 Rev. Jur. U.P.R. 601,

653-654, 2001.

   **Ahora bien, a pesar de que hemos reiterado que el derecho**

**a juicio rápido no está limitado por la tiesa aritmética de la**

**regla que lo concibe[7], Pueblo v. Candelaria, ante, el proceso**

**de determinación de lo que constituye o no "justa causa" para**

**una extensión de los términos no está desprovisto de controles;**

**esto así pues  "... el derecho a un juicio rápido es tan**

**fundamental como cualquier otro de los derechos fundamentales**

**que le garantiza a los acusados la Constitución". Pueblo v.**

**Rivera Rodríguez, ante, citando a Jiménez Román v. Tribunal**

**Superior, 98 D.P.R. 874 (1970). Para que el motivo de una demora**

**constituya    justa    causa    debe    estar    enmarcado    dentro    de**

---

**[7] En el afán de tutelar el derecho a juicio rápido que tiene todo imputado de delito, los tribunales no pueden caer en el error de equiparar este derecho, al menos en cuanto a su aplicación y efecto jurídico, a la institución procesal de la detención preventiva, consagrada en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, Artículo II, Sección 11. Si bien "la finalidad de la limitación a la detención preventiva coincide con uno de los propósitos que animan el derecho a juicio rápido del acusado, en cuanto esta garantía impide la encarcelación prolongada de quien no ha podido prestar fianza", Olga E. Resumil, Derecho Procesal Penal, New Hampshire, Butterworth, 1993, T. II, Sec. 25.4(a), pág. 249, el efecto del transcurso del término limitativo de seis meses de la detención preventiva, a diferencia del transcurso de los términos de la Regla 64(n), es la excarcelación inmediata del imputado. La forma en que opera el transcurso del término máximo de seis meses se distancia de tal manera de la naturaleza relativa del derecho a juicio rápido que, en Sánchez v. González, 78 D.P.R 849 (1955), (Sentencia), reconocimos que la renuncia del imputado de su derecho a juicio rápido no supone una renuncia con respecto al derecho a no estar sumariado en espera de juicio en exceso de seis meses toda vez**

parámetros de razonabilidad. <u>Pueblo</u> v. <u>Rivera Colón</u>, 119 D.P.R. 315 (1987).

Así, pues, una vez el imputado de delito reclama oportunamente una violación a los términos estatuidos en la Regla 64(n) de Procedimiento Criminal, ante, <u>el ministerio público tiene el peso de demostrar</u>: la existencia de causa justificada para la demora; o la renuncia expresa, voluntaria y con pleno conocimiento de este derecho por parte del imputado; o que el imputado ha sido el causante de la tardanza. <u>Pueblo</u> v. <u>Cartagena Fuentes</u>, ante; <u>Pueblo</u> v. <u>Santa Cruz Bacardí</u>, ante, citando: <u>Pueblo</u> v. <u>Carrión Roque</u>, 99 D.P.R. 362 (1970)[8]<u>http://web2.westlaw.com/Find/Default.wl?DB=2995&SerialNum=1970015735&FindType=Y&AP=&RS=WLW2.68&VR=2.0&SP=&SV=Split&MT=Westlaw&FN=_top</u>; <u>Pueblo</u> v. <u>Herrera</u>, 67 D.P.R. 25 (1947).

Cabe recordar que cuando la suspensión de la vista preliminar, o del juicio, es por justa causa o por causa atribuible al imputado, los términos de juicio rápido comienzan, <u>nuevamente</u>, a discurrir desde la fecha en que estuvieran las vistas señaladas. Hemos reconocido que en casos en que la determinación de causa probable para presentar la acusación recaiga en el último día del término para esos fines dispuesto, ello podría ser causa justificada para conceder un

---

que este derecho, a diferencia del derecho a juicio rápido, no es renunciable.

[8] Allí, reiteramos que "el peso de la prueba recae sobre el Ministerio Público y no sobre el acusado apelante. De lo contrario se menoscabaría la garantía constitucional a un juicio rápido considerado [sic] como uno de fundamental importancia para el acusado." <u>Pueblo</u> v. <u>Carrión Roque</u>, a la pág. 367.

breve periodo no mayor de dos (2) días laborables para la presentación de la misma. Pueblo v. Cartagena, ante.

Efectuado el reclamo por el imputado, corresponde al tribunal examinar ciertos criterios en conjunto. Estos son: (1) duración de la tardanza; (2) razones para la dilación; (3) si el acusado ha invocado oportunamente ese derecho, y (4) el perjuicio resultante de la tardanza. Cabe destacar que ninguno de estos criterios es determinante en la adjudicación del reclamo; el peso que a cada uno de éstos se le confiera está supeditado a las demás circunstancias relevantes que el tribunal viene obligado a examinar. Véase Pueblo v. Rivera Tirado, ante.

Con respecto al criterio de perjuicio, se ha establecido que el imputado no tiene que demostrar estado de indefensión; sólo tiene que demostrar que ha sufrido perjuicio. Pueblo v. Esquilín Maldonado, res. el 19 de octubre de 2000, 2000 TSPR 151. Sobre el descargo de este deber del imputado, nos informa el Profesor Ernesto L. Chiesa en su obra *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, 1992, Vol. II, pág. 153, al comentar que:

> ...corresponde al acusado establecer el perjuicio sufrido con la dilación, obligación que no se descarga con generalidades. Esto es distinto a las razones o justa causa para la dilación, donde es el ministerio fiscal o el gobierno quien tiene que persuadir al Tribunal, al menos cuando la dilación o suspensión es atribuible a conducta del gobierno.
>
> El Tribunal Supremo de Puerto Rico ha expresado que el perjuicio sufrido por el acusado con la dilación tiene que ser específico: "No puede ser

abstracto ni apelar a un simple cómputo de rigor matemático. Tiene que ser real y sustancial".[9]

Al referirnos al asunto de la tardanza, hemos expresado que la dilación, es decir, la mera inobservancia del término --sin más-- <u>no</u> necesariamente constituye una violación al derecho a juicio rápido, <u>ni</u> conlleva la desestimación de la denuncia o la acusación. <u>Pueblo</u> v. <u>Candelaria Vargas</u>, ante. Una dilación mínima es requisito de umbral para que un planteamiento de violación a juicio rápido progrese; <u>no obstante, el remedio extremo de la desestimación sólo debe concederse luego de efectuado un análisis ponderado del balance de los criterios antes esbozados</u>. Dicho de otra manera, la dilación en exceso de los términos estatuidos por la Regla 64(n) de Procedimiento Criminal, ante, es --simple y llanamente-- el factor que activa o hace necesaria la realización de este balance. Véase E. Chiesa, op. cit., págs. 141 y 162-163.  Sin dudas, no puede ser de otra manera pues afirmar lo contrario es dar un contenido hermético al concepto de "juicio rápido" y abstraerlo de las circunstancias variables que le afectan. <u>Más bien, al momento de evaluar este criterio, debe prestarse especial énfasis en determinar si la demora fue intencional y opresiva</u>, <u>Pueblo</u> v. <u>Rivera Tirado</u>, ante, en cuyo caso, claro está, queda excluida del concepto de justa causa. <u>Pueblo</u> v. <u>Rivera Colón</u>, ante.

Por otro lado, al abordar el aspecto de las razones que provocan la inobservancia de los términos de juicio rápido, <u>hemos establecido ciertas diferencias en cuanto al rigor con</u>

---

[9] Así fue precisado en <u>Pueblo</u> v. <u>Rivera Tirado</u>, ante.

el cual éstas deben ser evaluadas. A manera de ejemplo, en Pueblo v. Rivera Tirado, ante, expresamos que las demoras institucionales, que, de ordinario, son imputables al "Estado", y los cuales no tienen de forma alguna el propósito de perjudicar a la persona imputada o acusada, serán tratadas con menos rigurosidad que las intencionales, cuyo fin es entorpecer la defensa del imputado.[10] *Ibid*.

Ello no obstante, es preciso aclarar que el hecho de que las demoras no intencionales merezcan un trato más laxo no supone que las mismas, ausentes otras circunstancias, justifican la inobservancia de los términos de juicio rápido. Así lo resolvimos en Jiménez Román v. Tribunal Superior, ante, al expresar específicamente que la congestión del calendario del tribunal, por sí sola, no constituye justa causa para la demora en la celebración de un juicio. Algún tiempo después, en Tirado, ante, reiteramos lo dispuesto en Jiménez Román. En dicha ocasión, resolvimos que el derecho a juicio rápido "no puede ser menoscabado por razones tales como insuficiencia de recursos humanos y presupuestarios. Ambos problemas exigen atención de las autoridades correspondientes. La asignación de

---

[10] Como cuestión de hecho, el Departamento de Justicia no es la única entidad gubernamental que forma parte de nuestro esquema procesal acusatorio. Como se desprende de la relación de hechos, en el presente caso está involucrada la Administración de Corrección, quien falló en traer al tribunal a los imputados.

La propia Rama Judicial, naturalmente, lleva a cabo funciones inherentes al proceso cuyo desempeño puede ocasionar demoras en los referidos términos. Sin duda, las mismas engranan dentro del concepto de "demoras institucionales", las cuales se evalúan conforme exigen las circunstancias que las enmarcan. A manera de ejemplo, podemos mencionar: enfermedad del juez,

recursos adecuados a todos los componentes que intervienen en el sistema de justicia criminal es obligación ineludible del Estado." <u>Pueblo</u> v. <u>Rivera Tirado</u>, ante, pág. 436-37.

## II

Como mencionáramos previamente, las sucesivas suspensiones de las vistas para la determinación de causa probable para acusar provocaron que en los casos de epígrafe los imputados estuvieran sumariados en espera de la celebración de la vista preliminar por periodos que excedieron el término de treinta (30) días que establece la Regla 64(n)(5) de Procedimiento Criminal, ante. Específicamente, permanecieron en prisión periodos cuyo exceso fluctuó entre los diez (10) a los dieciséis (16) días, como máximo, transcurridos los cuales reclamaron oportunamente su derecho a juicio rápido, por voz de la Corporación de Acción Civil y Educación.[11] Con la invocación del mismo, se activó la necesidad de que el tribunal de instancia efectuara el balance de los factores antes mencionados, los cuales han de examinarse ante este tipo de reclamo. En el ejercicio de esta delicada tarea, el tribunal de instancia determinó que no hubo justa causa para no haber celebrado cada vista preliminar dentro del término dispuesto para ello, criterio con el cual coincidió el Tribunal de Circuito de Apelaciones.

---

congestión del calendario del tribunal, receso por vacaciones del tribunal, entre otras.

[11] Dentro de este contexto, no cabe hablar de renuncia al derecho a juicio rápido o consentimiento a la suspensión de las vistas

De los hechos ante nuestra consideración, no surge controversia alguna sobre la diligencia del ministerio público con respecto al procesamiento de los aquí imputados. Es decir, no existe duda con respecto a que la inobservancia del término para la celebración de la vista preliminar en cada caso no obedeció a demora alguna encaminada a entorpecer la defensa de los imputados.

Más bien, las circunstancias particulares de los casos demuestran un escenario de sucesivas suspensiones motivadas todas ellas por dos razones: el hecho de que las autoridades correspondientes no llevaran a los imputados al tribunal y la ausencia de abogado que los representara; ambas razones consecuencia directa de la implantación de una medida administrativa cuya aplicación resultó deficiente. En otras palabras, los cambios efectuados en el método mediante el cual los imputados de delito habrían de ser entrevistados y calificados para obtener representación de la Sociedad para Asistencia Legal frustraron dicho proceso e imposibilitaron la designación de abogados por parte del Estado a los imputados sumariados.[12] Como efecto neto de tal práctica malograda, los imputados ni siquiera fueron llevados a sala para la celebración de las correspondientes vistas preliminares ni compareció abogado alguno que les representara.

---

por parte de los imputados pues éstos ni siquiera fueron llevados a sala para la fecha de la celebración de las mismas.
[12] Esto así, como recordáramos, por virtud de la antes mencionada Orden Administrativa emitida por el Juez Administrador del Centro Judicial de San Juan.

Ante estas circunstancias, no hubo escapatoria: las vistas tenían que ser suspendidas pues, de lo contrario, no sólo se hubiese celebrado, sin ser lo procedente en derecho, una vista en ausencia, sino que, además, se hubiese violado a cada imputado su fundamental derecho a estar asistido de abogado tanto en ésa como en todas las etapas que conforman un proceso criminal, reconocido dicho derecho en el Artículo II, Sección 11, de la Constitución del Estado Libre Asociado de Puerto Rico. Ciertamente, estamos ante una demora institucional imputable al Estado la cual, objetivamente, no puede reputarse como intencional ni opresiva, por lo que, al efectuar el correspondiente balance de factores, merece ser evaluada en su justa perspectiva. Pueblo v. Rivera Tirado, ante.

Hay que reconocer que, a pesar de que el tribunal de instancia tuvo que suspender las vistas en tres ocasiones distintas, dicho foro señaló las mismas para fechas bastante cercanas logrando así que la demora no se prolongara más allá de lo necesario. Dentro de las circunstancias, éste es un elemento que no puede pasar desapercibido pues --tratándose de tres suspensiones-- la dilación mayor sólo alcanzó dieciséis (16) días. Además de lo anterior, dicho foro le requirió en más de una ocasión a la Sociedad para Asistencia Legal que entrevistara y calificara a los imputados y que mostrara causa por la cual no había cumplido con su deber de conferenciar a los imputados de delito. Si bien es correcto que el tribunal de instancia debió haber actuado con más celo respecto a su deber de designar prontamente representación legal a los imputados,

o quizás pudo haber desplegado un mayor grado de iniciativa para esclarecer las razones que motivaron las incomparecencias, <u>su proceder estuvo enmarcado dentro de parámetros de razonabilidad</u>.

No podemos obviar tampoco el hecho de que, de las alegaciones de los imputados-recurridos, <u>las cuales sólo se circunscriben a un simple cómputo matemático</u>, no se desprende que la dilación en la celebración de las vistas les haya causado o les habrá de causar perjuicio alguno.[13] <u>Al armonizar el reclamo de los imputados-recurridos con los aspectos relevantes antes mencionados, concluimos que hubo justa causa para la dilación en la celebración de las referidas vistas por lo que no se configuró una violación al derecho a juicio rápido de los aquí imputados.</u>[14]

---

[13] Es necesario aclarar que si bien en <u>Pueblo</u> v. <u>Cartagena Fuentes</u>, ante, reconocimos el perjuicio que le provocó a Cartagena un encarcelamiento indebido, lo hicimos en vista de todo el azaroso trámite procesal que éste había padecido, todo ello añadido al hecho de que, al momento de la presentación de la acusación, éste llevaba 81 días encarcelado sin justificación. Sin dudas, los hechos de <u>Cartagena Fuentes</u>, ante, recreaban patentemente el perjuicio resultante de la indebida reclusión del allí peticionario. No obstante ello, la consideración de la totalidad de las circunstancias del presente caso          --distintas a las de <u>Cartagena Fuentes</u>-- de las cuales se advierte que la tardanza no fue prolongada ni irrazonable, nos conduce a un curso decisorio distinto.

[14] Aun cuando ello no es determinante, no podemos pasar por alto que hemos resuelto que cuando efectivamente se determina que ocurrió una violación al derecho a juicio rápido, si bien el tribunal está impedido de celebrar la vista --pues lo que procede es la desestimación de la acusación-- <u>ello no es obstáculo para que, al amparo de la Regla 67 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R., 67, el Ministerio Público radicó una nueva acusación sin tener que comenzar de nuevo todo el proceso.</u> Véase: <u>Pueblo</u> v. <u>Rivera Rodríguez</u>, ante; <u>Pueblo</u> v. <u>Monge Sánchez</u>, 122 D.P.R. 590, 594 (1988).

La desestimación de las denuncias decretada por el tribunal de instancia, subsecuentemente confirmada por el foro apelativo intermedio, constituyó una adjudicación automática e inflexible de un planteamiento que tiene que ser evaluado, caso a caso, de conformidad con las circunstancias de las cuales emana. Ahora bien, debe quedar claro que la decisión que hoy tomamos está enmarcada dentro de la situación fáctica que caracterizó el reclamo de los imputados. Tal cual hemos establecido, la definición de lo que constituye justa causa es una cuestión que se define caso a caso. Véase: Pueblo v. Arcelay Galán, ante.

Con ello queremos destacar que, ante circunstancias distintas y en unión a otros factores relevantes, la repetida posposición de las vistas podría resultar, más que en una inobservancia de términos, en una violación del derecho a juicio rápido. A tenor con lo anteriormente expresado, el curso decisorio en el presente caso no constituye impedimento para afirmar que, en el descargo de la delicada responsabilidad que tienen los tribunales de instancia de procurar que los términos de juicio rápido dispuestos por nuestro ordenamiento procesal sean observados, es deber ineludible de los mismos desplegar el mayor grado de rigor y tomar todas las medidas cautelares necesarias para salvaguardar todos los intereses y derechos que estén involucrados.

III

Por las razones anteriormente expuestas, se expide el auto y se revoca la resolución dictada por el Tribunal de Circuito de Apelaciones el 30 de marzo de 2001, devolviéndose el caso al foro de instancia para procedimientos ulteriores compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                         FRANCISCO REBOLLO LOPEZ
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        vs.                  CC-2001-350        CERTIORARI

Luis A. Valdés Medina,
Víctor L. Trinidad Muñiz
Joe Caraballo Maldonado
Alejandro Osorio Hernández

    Acusados-recurridos

SENTENCIA

San Juan, Puerto Rico, a 4 de diciembre de 2001

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida el 30 de marzo de 2001 por el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, devolviéndose el caso al foro de instancia para procedimientos ulteriores compatibles con lo aquí resuelto.

    Así lo pronunció, manda el Tribunal y certifica al Secretaria del Tribunal Supremo. Los Jueces Asociados señor Hernández Denton y señor Fuster Berlingeri disienten sin opinión escrita. La Juez Asociada señora Naveira de Rodón no intervino.

                         Isabel Llompart Zeno
                 Secretaria del Tribunal Supremo