TEXTO COMPLETO DE LA SENTENCIA
Comparece el Pueblo de Puerto Rico (en adelante parte peticionaria) y solicita se revise una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante T.P.I.), el 12 de noviembre de 2009, en el caso Pueblo de Puerto Rico v. José L. Colón De Jesús, Criminal Núm. DMI2009-1138. [1] Mediante dicho dictamen, el T.P.I. expidió el auto de Hábeas Corpus solicitado por el señor José L. Colón De Jesús (en adelante recurrido) al amparo de la cláusula de Detención Preventiva de la Constitución del Estado Libre Asociado de Puerto Rico. [2]
I
El 9 de mayo de 2009, se radicaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (T.P.I.) 41 cargos contra el acusado José L. Colón De Jesús, c/p Marcian, por su alegada participación en concierto y *900 común acuerdo con Aquilino Pizarro Ortega; Juan Rodríguez Marrero c/p Apache; Sammy Báez Figueroa c/p Sammy Gatillo; José Cruz Ortiz c/p Ñoño; Jorge L. Reyes Santiago c/p Pecas; Luis Hernández Cruz c/p Bebito; Emmanuel Véíez Andino; Rafael Vélez Andino; Héctor L. Oquendo Cedeño c/p Topo; Omar Rivera Díaz c/p Menor. Los hechos alegados ocurrieron el 5 de mayo de 2009, en el Barrio Pájaros de Toa Baja, mejor conocida como la “Masacre de Toa Baja”, donde fallecieron tres (3) personas, incluyendo un menor de dos (2) años y donde resultaron heridas dos (2) personas, entre ellas una menor de tres (3) años.
Los cargos que le fueron imputados al acusado y a los co-acusados consistieron en: tres (3) cargos por el Artículo 106 del Código Penal, sobre Asesinato en Primer Grado; dos (2) cargos de Tentativa de Asesinato; nueve (9) cargos por el Artículo 5.07 de la Ley de Armas, relacionados a la utilización de rifles; tres (3) cargos por el Artículo 5.07 de la Ley de Armas relacionados a la utilización de pistolas automáticas; cinco (5) cargos por el Artículo 5.4 de la Ley de Armas por la utilización de pistolas; diecisiete (17) cargos por el Artículo 5.15 de la Ley de Armas, sobre apuntar y disparar; un (1) cargo por el Artículo 6.01 de la Ley de Armas, sobre la posesión de varias municiones y un (1) cargo de conspiración para matar, contenido en el Artículo 249 del Código Penal. Se encontró causa para arresto por cada uno de los delitos mencionados.
Al aquí recurrido, José L. Colón De Jesús c/p Marcian, se le impuso una fianza total de $51,005,000.00 y supervisión electrónica. Se ordenó su arresto el 10 de de mayo de 2009, al no poder prestar la fianza que le fue fijada, siendo ingresado el 11 de mayo de 2009, en el Centro de Institución Correccional Ponce Máxima. Se señaló Vista Preliminar, conforme a la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para el 22 de mayo de 2009, ante la Honorable Evelyn Hernández de Mártir. [3] Ese día compareció el acusado sin representación legal y la Fiscal de Distrito Wanda Vázquez Garced, quien indicó que estaba preparada para entrar a la vista.
Todos los demás imputados a excepción de Sammy Báez y Aquilino Pizarro Ortega, comparecieron sin abogados. La Honorable Juez Hernández de Mártir determinó asignarle abogado de oficio a éstos. La vista fue suspendida y re-señalada para el 5 de junio de 2009. (Anejo XXII, pág. 135). El 5 de junio de 2009, a la vista preliminar señalada compareció el Ledo. Luis Torres Meléndez, abogado de oficio en representación del acusado José L. Colón De Jesús c/p Marcian. La fiscal de Distrito Wanda Vázquez Garced, el Fiscal Enrique Rivera Mendoza y el Fiscal Alberto Valcárcel Ruiz comparecieron en representación del Ministerio Público e indicaron estar preparados. No obstante, la vista tuvo que ser suspendida, puesto que el abogado del acusado no estaba preparado, ya que recién había asumido la representación legal de éste. La vista preliminar se reseñaló para el 3 de agosto de 2009. (Anejo XXII, págs. 135 - 136 peticionaria).
En esa fecha, 3 de agosto de 2009, comparecieron a la vista preliminar la Leda. Mayra López Mulero, una vez relevado de representación el Ledo. Luis Torres Meléndez, en representación del aquí recurrido. El Ministerio Público estuvo representado por la Fiscal de Distrito, Wanda Vázquez Garced, el Fiscal Enrique Rivera Mendoza y el Fiscal Alberto Valcárcel Ruiz. [4] En esa fecha, 3 de agosto de 2009, comenzó la vista preliminar con el testimonio del Sr. Billy Vargas Pérez. Ese día no terminó el desfile de prueba, razón por la cual se señaló la continuación de vista para el 14 de agosto de 2009. (Anejo XXII, página 136, peticionaria; Anejo XX, página 128, peticionaria).
Llegada la fecha del 14 de agosto de 2009, se llamó el caso para la continuación de la celebración de la vista preliminar. A ésta compareció el Ministerio Público representado por la Fiscal Wanda Vázquez Garced, el Fiscal Enrique Rivera Mendoza y el Fiscal Alberto Valcárcel. Por la defensa compareció la Leda. Mayra López Mulero. La vista no se celebró por razón de que el imputado no estuvo presente. El Tribunal ordenó citar a los testigos que no comparecieron. La vista preliminar se reseñaló para su continuación el 10 de septiembre de 2009. [5]
En fechas 10 y 11 de septiembre de 2009, se continuó la celebración de la vista con el testimonio del testigo Vargas Pérez. A estas vistas compareció la Leda. Mayra López Mulero, por la defensa, y la Fiscal de Distrito *901 Wanda Vázquez Garced, y los Fiscales Enrique Rivera Mendoza y Alberto Valcárcel Ruiz por el Ministerio Público. Pendiente la conclusión del contrainterrogatorio, se reseñaló la continuación de la vista para el 30 de septiembre de 2009. [6] El 30 de septiembre de 2009, compareció por la defensa la Leda. Mayra López Mulero y por el Ministerio Público, la Fiscal Wanda Vázquez Garced y los Fiscales Enrique Rivera Mendoza y Alberto Valcárcel Ruiz. Se continuó con el contrainterrogatorio al testigo Vargas Pérez. Al no concluir con éste, se recalendarizó para continuar el 16 de octubre de 2009. [7]
Llamado el caso el 16 de octubre de 2009 ante la Honorable Evelyn Hernández Mártir, compareció por lá defensa la Leda. Mayra López Mulero y por el Ministerio Público la Fiscal de Distrito Wanda Vázquez Garced y los Fiscales Enrique Rivera Mendoza y Alberto Valcárcel Ruiz. Se continuó con el contrainterrogatorio al testigo Billy Vargas Pérez, único testigo presentado hasta el momento. Al no concluirse el mismo, se reseñaló para continuar el 23 de octubre de 2009. [8]
El 23 de octubre de 2009, a la vista preliminar compareció la defensa representada por la Leda. Mayra López Mulero. El Ministerio Público representado por la Fiscal Wanda Vázquez Garced y los Fiscales Enrique Rivera Mendoza y Alberto Valcárcel Ruiz. Se concluyó el contrainterrogatorio del único testigo presentado, Sr. Vargas Pérez. También testificaron la Agente Vivian Acevedo y el Forense Edwin Vázquez. Luego de las argumentaciones de ambas partes la Hon. Evelyn Hernández determinó causa probable para acusar en todos los cargos imputados contra el aquí recurrido José L. Colón De Jesús c/p Marcian y contra todos los restantes co-imputados. (Anejo XXII, página 137, peticionaria; Anejo XX, páginas 129 - 130, peticionaria).
Las acusaciones se presentaron ante el Tribunal el 3 de noviembre de 2009 y la lectura de acusación fue señalada para el 5 de noviembre de 2009. El juicio en su fondo fue pautado para el 3 de diciembre de 2009. (Anejo XXII, página 137, peticionaria). [9] El 5 de noviembre de 2009, se celebró la lectura de acusación en la Sala 606 del Honorable Juan José Delgado. Según consta del expediente del Tribunal, para esa fecha, el acusado llevaba 178 días confinado. El 9 de noviembre del 2009, en horas de la tarde se radicó una Moción de Habeas Corpus por parte de la defensa por lo que ésta se señaló para vista el 12 de noviembre de 2009, ya que no se pudo citar al acusado para el 10 de noviembre y el 11 de noviembre era día feriado. En esa fecha se inició la vista para ventilar el recurso de Habeas Corpus. La supervisora de la Institución de Máxima Seguridad de Ponce, Myriam Irizarry, declaró sobre la certificación de que el acusado fue recluido en la mencionada institución desde el 11 de mayo de 2009, por lo que habían transcurrido 185 días de reclusión a la fecha de la vista.
A la luz de está información, la defensa planteó que mantener al acusado José L. Colón De Jesús c/p Marcian encarcelado violentaría lo dispuesto en la Sección 11 del Artículo II de la Constitución de Puerto Rico. Aseguró que según la Jurisprudencia del Tribunal Supremo de Puerto Rico, en especial Pueblo v. Paonesa Arroyo, 2008 J.T.S. 55, 173 D.P.R._(2008), su representado José L. Colón De Jesús c/p Marcian, llevaba en exceso de 180 días o seis (6) meses de detención preventiva que permite la Constitución de Puerto Rico y procedía su excarcelación
Por otra parte, durante su primer tumo, el Ministerio Público mencionó que recibió copia de la solicitud de Habeas Corpus y que se opuso bajo los mismos argumentos que en el caso de Aquilino Pizarro Ortega. Aseguró que las dilaciones por las cuales el ministerio público no pudo llevar a juicio al Sr. José L. Colón De Jesús c/p Marcian, dentro de los 180 días, responden a las posposiciones por los conflictos de calendario entre los abogados de defensa. Indicó que los primeros dos señalamientos de vista fueron suspendidos con cargo a la defensa por acudir a la misma sin representación legal. En el primer señalamiento acudió sin abogado, por lo cual se le asignó un abogado de oficio y para la segunda ocasión, se presentó con representación legal privada. Manifestó que no puede, de forma alguna premiarse a un acusado, descansando en el absolutismo de un derecho, sustrayéndonos de la realidad práctica de la imposibilidad del estado provocada por el acusado para llevar a cabo el juicio. Además, indicó que en este caso en particular la imposibilidad del Estado se debió al “rapto del proceso” como se menciona en el caso de Sánchez v. González, 78 D.P.R. 849 (1955), que hubo por parte de los abogados de la *902 defensa. Solicitó que en el juicio el calendario del tribunal no puede estar atado y supeditado al calendario de los abogados.
La Leda. López Mulero indicó que ella era la primera abogada en llegar a sala en todos los procedimientos. Aseguró que el Ministerio Público nunca cuestionó los señalamientos, ni las fechas seleccionadas para la continuación de la vista preliminar, ya que fueron escogidas en consenso entre la defensa y el ministerio público. Manifestó que durante la vista preliminar, el ministerio público nunca levantó el argumento de que se acercaba el término de los 180 días de detención preventiva. Puntualizó que el ministerio público determinó en el descargo de su discreción, presentar los asuntos de manera consolidada. Si existía el interés de que el procedimiento se atendiera dentro de los seis (6) meses, contaba con el poder y la prerrogativa de separarlos y atenderlos uno a uno y no puede luego ir en contra de sus propios actos. Para evidenciar su interés y su disposición de atender rápidamente este caso, mencionó que le solicitó autorización a la Hon. Jueza Eloina Torres Cancel de la Sala 1105, suspender un caso por jurado que se encontraba en las postrimerías del mismo para poder continuar a la brevedad posible el desfile de la prueba en vista preliminar de este caso. Además, indicó que el día de la explosión de los tanques de la Gulf, se trabajó hasta las diez (10) de la noche. Aseguró que ese día llegó a las 8:30 a.m. y el ministerio público no comenzó el desfile de la prueba hasta casi el medio día. Manifestó que siempre ha estado disponible para atender este caso.
El ministerio público replicó que por ser grabada la vista preliminar, permanece registrado todo lo que se tuvo que esperar por los abogados de la defensa y que el ministerio público estuvo desde la fecha en que se citó. Rechazó el argumento de la defensa de que existió consenso de las partes en la selección de las fechas para la continuación de la vista. Indicó que no existió alternativa, que al acercarse al estrado siempre surgió conflicto con el calendario de los abogados. Por otro lado, calificó de obvia la decisión de atender los casos en conjunto al estar imputando una conspiración. [10]
Contando con el beneficio de la argumentación y los escritos de ambas partes, incluido el escrito de oposición al Hábeas Corpus presentado por el Ministerio Público, el Juez Delgado dictó Resolución el 12 de noviembre de 2009, declarando Con Lugar la solicitud de Hábeas Corpus, ordenando la excarcelación del acusado José L. Colón De Jesús, c/p Marcian, imponiéndole la instalación de un grillete electrónico, el cual será supervisado por la Oficina de Servicios con Antelación al Juicio.
Inconforme con tal dictamen, el Ministerio Público procedió a presentar el presente recurso de Certiorari.
n
Nuestro ordenamiento jurídico constitucional establece que todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio y, además, que la detención preventiva antes del juicio no excederá un término de seis meses. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. La detención preventiva se refiere al período antes del juicio en el cual el acusado se encuentra sumariado, por razón de no haber podido prestar la fianza impuesta, en espera de que se le celebre el correspondiente proceso criminal. Pueblo v. Figueroa Garriga, 140 D.P.R. 225, 232 (1996). La protección constitucional contra la detención preventiva en exceso de seis meses no está consagrada en la Constitución de los Estados Unidos de América.
Un examen de las fuentes originarias de la detención preventiva, con el fin de evaluar su alcance jurídico, fue realizado por el Juez Negrón Fernández en Sánchez v. González, 78 D.P.R. 849 (1955). [11] Citamos en extenso el historial que se acreditó respecto esta figura:
“El informe de la Comisión de Carta de Derechos a la Convención Constituyente, contiene el siguiente único párrafo sobre este extremo:
La disposición limitando a seis meses la detención preventiva es nueva en nuestra jurisdicción. Tiene por *903 propósito impedir que se pueda encarcelar a una persona por más de seis meses sin celebrarle juicio. Actualmente es posible lograr esto, mediante la radicación de acusaciones sucesivas, cada vez que finalice el término de ciento veinte días que marca la ley.”
En el curso de los debates sobre dicho Informe, varios delegados se expresaron sobre el alcance del precepto, así:
"El Sr. Alvarado:
"Para oponerme, señor Presidente. Al redactarse esta medida se tuvo en cuenta -como la está teniendo el compañero Gelpi-, la legislación vigente. La legislación vigente concede al fiscal 60 días para radicar la acusación. Y entonces dispone que el juicio debe celebrarse dentro de 120 días después de radicada la acusación. Y en total establece un término de 180 días desde el que el acusado es detenido para responder hasta que se somete ajuicio, 180 días, que son los seis meses que hemos venido consignando.
Esa es la idea, la norma, la medida que usamos. Ahora, piense el compañero y piensen los compañeros delegados, que el término de dos meses es absolutamente insuficiente para poder disponer definitivamente de un caso criminal a través de un juicio. Si fuese un sólo juicio, pues seria fácil, pero los tribunales están sobrecargados de trabajo en lo criminal. Este término que estamos fijando es tan y tan perentorio que si llegan los seis meses y el acusado no ha sido sometido a juicio, la corte tiene que ponerlo en la calle por un Habeas Corpus inmediatamente que hayan pasado los seis meses. Si corremos eso a los dos meses, yo digo que será absolutamente imposible para este Estado, para este Gobierno, atender todos los procesos criminales y dejarlos despachados dentro de los 60 días de la comisión del delito.”
"Sr. Rivera Colon: ¿Me permite una pregunta? ¿Esto dice la detención preventiva antes del juicio?”
"Sr. Alvarado: Antes del juicio, antes de someterse a juicio. No es que tiene, es que no pueden pasar de los 6 meses. Si llega a seis meses un día, el hombre se va a la calle por un Hábeas Corpus. Puede ser a los dos (2) meses, puede ser a los dos días, puede ser a los tres días, pero no puede ser después de seis meses.”
“Sr. Rivera Colon: ¿No puede ser después de seis meses?”
"Sr. Alvarado: Dentro de los seis meses hay que celebrar el juicio. Si no se celebra el juicio dentro de los seis meses, el hombre va para la calle. Ahora, si bajamos eso a dos meses, yo le garantizo que la maquinaria aquí en Puerto Rico, [que] ha multiplicado su eficiencia por diez, [no] podría confrontarse adecuadamente con la situación y despachar todos los casos criminales en dos meses con el juicio correspondiente. El término de seis meses es prudente, es razonable, corresponde a la legislación actual y podría funcionarse con el. Con el otro término sería un absurdo y estaríamos echando constantemente a la calle a las personas porque no podrían ser sometidas razonablemente ajuicio dentro del término de seis meses....”.
"El Sr. Reyes Delgado: ... Lo que hay que tener en cuenta aquí es si la situación de los acusados se va a mejorar en alguna forma sustancial con esta disposición. Y se mejora, ¿se pone en peligro la administración de la justicia? No. ¿Puede darse un término más corto sin poner en peligro la administración de la justicia criminal? No. Ya la Legislatura insular ha fijado por ley términos que se consideran razonables para que se actúe; es decir, dos meses para radicar la acusación, cuatro meses de la radicación de la acusación, o sea 120 días para traerlo ajuicio. Si dentro de esos seis meses ahora no se le celebra juicio, el fiscal pide el archivo y sobreseimiento y especialmente si se trata de un "felony', procede otra vez a arrestar al individuo y a recluirlo preventivamente y puede tenerlo otros seis meses en la cárcel sin celebrarle juicio.”
"Y a eso es a lo que vamos nosotros encaminando este precepto: que se usen los seis meses de que la legislación *904 local ha tenido a bien proveer al ministerio publico para que haga efectiva la maquinaria del pueblo en la administración de la justicia penal. Pero que después, por no haber una disposición de esta naturaleza, no se burle lo que se ha creído que es suficiente para procesar a un hombre y mandarlo a la cárcel. Yo entiendo que si se rebajaran a menos de seis meses, estaríamos poniendo en peligro el principio total y entorpeciendo la administración de la justicia....".
"El Sr. González Blanes:... una cosa son los seis meses que se conceden, los 60 días que se conceden para la presentación de la acusación y los 120 días durante los cuales se le debe someter a juicio. Y otra es la detención preventiva. Lo que se quiere evitar con esta disposición es que un individuo esté preventivamente detenido por tiempo [ijlimitado, como acontece muchas veces en los tribunales. Y no se refiere a la obligación que tiene el fiscal de presentar la acusación dentro de los 60 días ni al derecho que tiene el acusado a que se le celebre juicio, de acuerdo con el Código de Enjuiciamiento Criminal, dentro de los 120 días....".
"El Sr. Alvarado nuevamente: Lo que dice el texto es que si a los seis meses de estar el detenido no se le ha celebrado juicio, hay que ponerlo en la calle. Ahora, el proceso sigue, porque eso no lo estamos rigiendo con esta disposición....".
"El Sr. Benitez, Presidente de la Comisión de Carta de Derechos: ... Precisamente quedo aclarado, señor Soto, al indicarse esta cláusula, 'antes de juicio' que se establecía a los fines de dejar explicito el hecho de que la protección que aquí se quería establecer era la protección para la persona que aún no había sido juzgada y que sin haber sido juzgada en la actualidad a veces ocurría que estaba por más de seis meses en la cárcel, porque no había podido prestar fianza o porque no se le había celebrado juicio. Entonces lo que se ha querido subsanar es esta situación particular donde no ha mediado juicio alguno.”
"Esto lo que quiere decir es que en los casos donde no ha mediado juicio, una persona no puede estar detenida en la cárcel por más de seis meses. Llega el día del último mes de los seis meses y entonces lo ponen en la calle y eso no impide que se celebre juicio; pero se le celebra juicio ahora estando como si estuviera bajo fianza, sin estarlo....". (Énfasis nuestro).
Véase, Opinión del Juez Negrón Fernández en Sánchez v. González, supra, a las págs. 851-854.
El Juez Negrón Fernández analizó si dos solicitudes de posposición del juicio hechas por el acusado antes de transcurrir el período de seis meses de detención preventiva equivalen, como sostenía el fiscal, a una renuncia, no del derecho a juicio rápido, sino del derecho a salir en libertad una vez vencidos los seis meses sin haberse celebrado el juicio. Concluyó que la detención preventiva no es renunciable aunque tampoco es absoluta y expuso:
“El derecho que dimana de ese precepto, sin embargo, no es absoluto. Como es un derecho que madura normalmente por el mero lapso del tiempo, ni la ilegalidad ni el fraude de un acusado -en actos tendentes a producir la incapacidad del Estado para someterle a juicio-, ampararían su ejercicio incondicional. Ese derecho, que no puede ser objeto de renuncia, tampoco puede ser objeto de rapto, y de mediar circunstancias del carácter de las apuntadas, el acusado no podría reclamarlo hasta que el Estado, pudiendo descargar prontamente su responsabilidad trayéndole ajuicio, dejare de hacerlo.” Véase, Opinión del Juez Negrón Fernández en Sánchez v. González, supra, a las pág. 858.
Ahora bien, estas expresiones no constituyeron una opinión mayoritaria del Tribunal Supremo de Puerto Rico. Su naturaleza es persuasiva, mas no vinculante respecto el alcance de la detención preventiva.
Opina el autor David Rivé, que la protección constitucional de la detención preventiva no se afecta porque el *905 acusado haya solicitado y obtenido la suspensión del juicio. D. Rivé Rivera, Recursos Extraordinarios, 2da ed. revisada, San Juan, Ed. Programa Educación Jurídica Continua de la Facultad Derecho U.I.P.R., 1996, pág. 147; Opinión del Juez Negrón Fernández en Sánchez v. González, supra, a las págs. 855-856. Irrespectivamente de la causa por la cual no se haya podido celebrar el juicio, el acusado se hace acreedor a su excarcelación al transcurrir seis meses desde su detención preventiva. Rivé Rivera, op. cit., pág. 147.
La protección constitucional contra una detención preventiva más allá de seis meses y la disposición constitucional sobre juicio rápido, coinciden en su aspecto teleológico de impedir la encarcelación prolongada de quien no ha podido prestar fianza. Ruiz v. Alcaide, 155 D.P.R. 492, 502-503 (2001); O.E. Resumil, Derecho Procesal Penal, New Hampshire, Ed. Equity, 1993, T. 2, Sec. 25.4(a), pág. 249. Ahora bien, estos derechos constitucionales -juicio rápido y una detención preventiva que no exceda de seis meses-, se distinguen. En una nota al calce a la reiterada norma de que el derecho a juicio rápido no está limitado por la tiesa aritmética de la regla que lo concibe, el Tribunal Supremo sostuvo:
“En el afán de tutelar el derecho a juicio rápido que tiene todo imputado de delito, los tribunales no pueden caer en el error de equiparar este derecho, al menos en cuanto a su aplicación y efecto jurídico, a la institución procesal de la detención preventiva, consagrada en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, Articulo II, Sección 11. Si bien "la finalidad de la limitación a la detención preventiva coincide con uno de los propósitos que animan el derecho a juicio rápido del acusado, en cuanto esta garantía impide la encarcelación prolongada de quien no ha podido prestar fianza", Olga E. Resumil, Derecho Procesal Penal, New Hampshire, Butterworth, 1993, T. II, Sec. 25.4(a), pág. 249, el efecto del transcurso del termino limitativo de seis meses de la detención preventiva, a diferencia del transcurso de los términos de la Regla 64(n), es la excarcelación inmediata del imputado. La forma en que opera el transcurso del termino máximo de seis meses se distancia de tal manera de la naturaleza relativa del derecho a juicio rápido que, en Sánchez v. González, 78 D.P.R. 849 (1955), (Sentencia), reconocimos que la renuncia del imputado de su derecho a juicio rápido no supone una renuncia con respecto al derecho a no estar sumariado en espera de juicio en exceso de seis meses toda vez qué este derecho, a diferencia del derecho a juicio rápido, no es renunciable.” (Énfasis nuestro).
Pueblo v. Valdés, 155 D.P.R. 781, 790 (2001), nota al calce 7.
El término máximo de seis meses de detención preventiva, por disposición constitucional, transcurre contra el Ministerio Publico, quien tiene la obligación de iniciar con diligencia la celebración del juicio. Ruiz v. Alcaide, supra, a la pág. 503. La cláusula de la detención preventiva tiene como propósito el asegurar la comparecencia del acusado al proceso cuando éste no ha prestado fianza. Pueblo v. Paonesa, 2008 J.T.S. 55, 173 D.P.R._(2008). La duración limitada del período de detención preventiva pretende evitar que se convierta en un castigo anticipado por un delito no juzgado. Id. Esta cláusula es un límite constitucional al poder de custodia del Estado, pues el imputado se presume inocente y no debe ser castigado en anticipación de un delito por el cual aún no ha sido juzgado. Pueblo v. Pagán Medina, supra.
La detención preventiva en exceso de seis meses antes del juicio es ilegal al amparo del Art. II, Sec. 11 de la Carta de Derechos de la Constitución de Puerto Rico, supra. Ruiz v. Alcaide, supra, a la pág. 503; Pueblo v. Ortiz Bonilla, 76 D.P.R. 247, 249 (1954). Dicha ilegalidad -que puede plantearse en un procedimiento de Hábeas Corpus-, no evita el encauzamiento penal contra el imputado. Pueblo v. Ortiz Bonilla, supra, a la pág. 249; Pueblo v. Cruz Román, 84 D.P.R. 451, 456 (1962). La única consecuencia del transcurso del mencionado término es que se pueda lograr la excarcelación del imputado mediante la presentación de un recurso de Hábeas Corpus fundamentado en la ilegalidad de su detención preventiva. Ruiz v. Alcaide, supra, a la pág. 504, citando 3 Diario de Sesiones de la Convención Constituyente 1595 (1952). Es decir, el proceso criminal continuará y el juicio se celebrará con el acusado en libertad. Ruiz v. Alcaide, supra, a la pág. 503.
*906 En fin, el derecho a no permanecer detenido preventivamente por más de seis meses es un principio tan valorado en nuestra sociedad que fue elevado a rango constitucional y es uno irremmciable. Pueblo v. Pagán Medina, supra. Nuestro Tribunal Supremo confirmó que los fundamentos de la opinión del Juez Asociado señor Negrón Fernández en Sánchez v. González, supra, para negarse a aceptar que la solicitud de posposición del juicio fuera equivalente a una renuncia al término máximo de detención preventiva, se sostienen en derecho y constituyen una norma a seguir.
Por último, sobre el cómputo del término de seis meses de detención preventiva se ha señalado que: (1) suspensiones con cargo a la defensa no afectan el transcurso del término, (sentencia Sánchez v. González, supra); (2) no está detenida preventivamente una persona que está recluida en una institución psiquiátrica bajo tratamiento, por orden judicial, luego de que el tribunal determinara que no está capacitada para ser sometida a juicio, Ruiz v. Alcaide, supra; (3) al computar el término máximo de detención preventiva se debe excluir el tiempo que el imputado está recluido en una institución adecuada para su tratamiento conforme orden del tribunal, Pueblo v. Pagán Medina, supra. [12] El Tribunal Supremo excluye del cómputo de la detención preventiva el tiempo que la persona está recluida en una institución por orden judicial porque entiende que durante ese término no está sujeta a ser procesada criminalmente ni está bajo detención preventiva. Pueblo v. Pagán Medina, supra.
ni
Este resulta ser el segundo recurso de Certiorari que nos toca atender, relacionado con los incidentes acaecidos el cinco (5) de mayo de 2009, en el Barrio Pájaros del Municipio de Toa Baja, también conocido como “La Masacre de Toa Baja”, y en que se solicita la excarcelación de un co-acusado por alegada violación a la disposición constitucional sobre detención preventiva. [13]
El recurso de Certiorari ante nos, se plantea el mismo señalamiento de error del caso KLCE-2009-01655, Pueblo v. Aquilino Pizarro Ortega, y se reproduce el alegato sobre el derecho aplicable y la discusión del error.
Como en el caso de referencia (Pueblo v. Aquilino Pizarro Ortega), la controversia medular ante nos es si la alegada dilación de los procedimientos con antelación a la celebración de un juicio criminal, atribuibles a la defensa del imputado según el Ministerio Público, son causa suficiente para eximir al Estado de dar fiel cumplimiento al mandato constitucional de que un ciudadano no permanezca encarcelado en detención preventiva en exceso de seis (6) meses, sin la celebración del juicio. Para adjudicar esta controversia nos es forzoso analizar, la procedencia de la alegación del “rapto del proceso” por parte de la defensa, según reclama el Ministerio Público. [14]
El Ministerio Público se queja de que las actuaciones de los abogados de defensa provocaron la dilación del proceso en la celebración de la vista preliminar, a tal grado, que transcurrieron los seis (6) meses de detención preventiva sin que se iniciara el juicio, conforme requiere la disposición constitucional.
Un examen detenido de las nueve sesiones de la prolongada vista preliminar, reseñada en la resolución recurrida, resalta que la abogada del recurrido Colón De Jesús estuvo presente en todas las vistas citadas desde que asumió su representación. [15] En todas estas comparecencias, la Leda. Mayra López Mulero manifestó que la defensa estaba preparada para ver la vista. (Anejo XXII, páginas 136-137, peticionaria).
El planteamiento del Ministerio Público olvida que no se puede responsabilizar al imputado Colón De Jesús por la alegada conducta, de ser cierta, de otros abogados de los co-imputados. Por otro lado, el sentido de urgencia para acelerar el trámite procesal, expresado en el recurso de Certiorari y de la reseña de las vistas celebradas entre el 22 de mayo y el 23 de octubre de 2009, según recogidas en la Moción de Oposición al Hábeas Corpus de 10 de noviembre de 2009, no se refleja en las mociones presentadas por el Ministerio Público ante el T.P.I. La Fiscalía de Bayamón presentó dos mociones en las que alude a señalamientos de los *907 casos. En la primera solicitó un cambio de señalamiento contra el imputado José L. Colón De Jesús para que su caso se uniera a los demás co-imputados y se adelantara 4 días. (Véase, Anejo II, página 19, peticionaria).
La segunda moción del Ministerio Público se presentó el 16 de junio de 2009, para solicitar que la vista preliminar pautada para el 19 de junio de 2009 en el caso contra el imputado Luis J. Hernández Cruz se uniera a los demás imputados y se pospusiera para el 3 de agosto de 2009, fecha en que se celebraría la vista preliminar en contra de éstos. (Anejo V, pág. 23, peticionaria). Tal sentido de urgencia tampoco se trasluce del reseñalamiento de la vista del 5 de junio de 2009 al 3 de agosto de 2009, un período de 59 días, por acuerdo entre los abogados y anuencia del tribunal. Surge de la nota del segundo señalamiento de 5 de junio, en la Moción en Oposición a Hábeas Corpus, que el Ministerio Público informa que: “la fecha del 3 de agosto se debió a que todos los abogados tenían conflictos en sus calendarios y pese a la insistencia de la Juez Hernández, ninguno se pudo poner de acuerdo en una fecha más cercana. Nos consta que la Juez estuvo sumamente pendiente del término al cual la Fiscal le llamaba la atención, pero no pudieron señalar otra fecha anterior”. (Anejo XX, página 128, peticionaria).
El Ministerio Público argumenta que oralmente objetó la forma en que se pautaba la continuación de la vista preliminar. Sin embargo, el expediente ante nos carece de una moción en la que el Ministerio Público procurara una resolución de la Juez, sobre la forma en que se pautaba la calendarización de continuación de las vistas, o que se recurriera al Tribunal de Apelaciones en búsqueda de un remedio. De hecho, el Hon. Juez Delgado aborda esta circunstancia en sus determinaciones de hechos, número 7 y 8. La determinación de hechos Núm. 7 señala “del expediente del tribunal no existe moción alguna que indique que el ministerio público hiciera una gestión adicional para que este caso se viera dentro de los términos que no fuera adelantar la vista preliminar de alguno de los acuerdos para que se viera conjunto con los demás, pero no solicitó al Tribunal que se vieran sábados, domingos o días feriados. ” A su vez, la determinación de hechos número 8 señala: “el ministerio público se limitó a oponerse a los señalamientos escogidos por la defensa y señalar que se adelantaran los calendarios y que la Juez ordenara para que los abogados vinieran preparados. ”
Las partes pueden plantear al Tribunal conflictos en el calendario y otras objeciones, pero corresponde al Juez establecer medidas de control y orden en el proceso judicial.
La Regla 43(c) de Evidencia, 32 L.P.R.A. Ap. IV, concede amplia discreción al Juez para que la prueba se presente “en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando dilaciones innecesarias”. El Juez tiene la autoridad para establecer medidas que garanticen control y orden en el proceso judicial. Regla 43(c), supra. Con mayor justificación, en un caso donde hay múltiples imputados, cargos criminales y testigos. Al aludir a medidas de control y orden del proceso, nos referimos al señalamiento del caso para trabajar en días sucesivos, el cumplimiento de las partes con los horarios de trabajo en el Tribunal, dar prioridad en el calendario de los abogados y del Tribunal sobre otros asuntos menos complejos, completar prontamente el descubrimiento de prueba, en fin, realizar todas las cesiones necesarias para iniciar el juicio.
La obligación de velar por la rapidez del proceso y evitar dilación innecesaria compete al Juez, pero igualmente es responsabilidad de los abogados, fiscales y las partes en el proceso.
Finalmente, el expediente ante nos refleja que concluida la presentación de la prueba se determinó causa probable para acusar el 23 de octubre de 2009, y se presentaron ante el Tribunal las acusaciones once días más tarde, el 3 de noviembre de 2009, celebrándose el acto de lectura de acusaciones el 5 de noviembre de 2009. El día 9 de noviembre de 2009 se presentó la Moción de Hábeas Corpus que dio paso a la resolución recurrida del 12 de noviembre de 2009.
*908 IV
Mediante el presente recurso de Certiorari, el Ministerio Público nos ha planteado que la normativa prevaleciente en cuanto al derecho constitucional de que la detención preventiva antes del juicio no excederá de seis meses, debe analizarse bajo el palio de los hechos específicos acaecidos en este caso, en donde, desde su perspectiva, el imputado José L. Colón De Jesús, c/p Marcian, ha dilatado los procedimientos de manera intencional al punto de haber “raptado el proceso” previo a la celebración del juicio, haciendo imposible que el Estado pudiera iniciar el juicio en su fondo antes de que transcurrieran 180 días desde su detención.
Analizada con ponderación la cronología de eventos desde la determinación de causa probable para arrestar al imputado, acaecida el 9 de mayo de 2009, hasta la lectura de acusación acaecida el 5 de noviembre de 2009, y el encarcelamiento del recurrido desde el 11 de mayo de 2009 hasta la celebración de la vista de Hábeas Corpus el 12 de noviembre de 2009, no podemos concurrir con la posición del Ministerio Público.
El expediente ante nos no refleja que el aquí recurrido haya “raptado el proceso” previo a la celebración del juicio mediante estrategias y manipulaciones dirigidas a dilatar el mismo, al punto en que transcurrieran 180 días y provocar así su excarcelación. Por otro lado, como apuntáramos en el análisis sobre el estado de derecho vigente, al interpretar la cláusula constitucional sobre detención preventiva, “irrespectivamente de la causa por la cual no se haya podido celebrar el juicio, el acusado se hace acreedor a su excarcelación al transcurrir 6 meses desde su detención preventiva. Rivé Rivera, op. cit., pág. 147. El término máximo de 6 meses de detención preventiva, por disposición constitucional, transcurre contra el Ministerio Público, quien tiene la obligación de iniciar con diligencia la celebración del juicio. Ruiz v. Alcaide, supra, a la pág. 503.
Y como bien expresara nuestro más alto foro en Pueblo v. Pagan Medina, supra, “esta cláusula es un límite constitucional al poder de custodia del Estado que se cimenta en la presunción de inocencia del imputado y en el que no debe ser castigado por un delito por el cual todavía no ha sido juzgado Es por ello que la normativa sobre la cláusula de detención preventiva hace de esta protección y este derecho uno irreminciable, plasmado así el elevado valor que entraña este principio como una piedra angular de nuestra sociedad democrática.
Y
Antes de concluir nuestro dictamen, reiteramos nuestras expresiones vertidas en nuestra Sentencia de 12 de noviembre de 2009, en el caso KLCE-2009-01655, referentes a los sucesos trágicos de la llamada “Masacre del Barrio Pájaros de Toa Baja. “Dejamos claramente establecido que no hacemos abstracción del dolor y la angustia que ha producido en las familias de las victimas, el desenlace fatal del atentado a sus vidas y de la solidaridad y adhesión que sentimos hacia éstas por la pérdida de sus seres queridos. Hacemos votos porque la maquinaria judicial en movimiento produzca con prontitud y justicia la verdad de lo acontecido, e imponga el rigor y el peso de la ley sobre quien sea responsable, no importa sus motivos.”
En lo que toca al aquí recurrido, acusado junto a otros individuos de estos hechos, nuestro dictamen no le reconoce más derechos que aquellos que le reconoce la Constitución del Estado Libre Asociado a todo ciudadano que es privado de su libertad de forma preventiva en exceso de seis (6) meses ó 180 días. Art. II, Sección 11, Carta de Derechos, Constitución de Puerto Rico, supra. El proceso criminal continuará en su contra y el juicio se celebrará con el acusado en libertad. Ruiz v. Alcaide, supra, a la pág. 503.
. .El Honorable Juez Delgado Delgado, Juez Superior, ha dispuesto en su resolución que el imputado deberá utilizar un grillete electrónico bajo la supervisión de la Oficina de Servicios Con Antelación al Juicio, lo que brinda una expectativa de seguridad a la sociedad en cuanto al sometimiento de éste al aparato de seguridad del Estado y en cuanto a su eventual comparecencia al juicio.
VI
Por los fundamentos anteriormente expresados, se EXPIDE el auto de Certiorari solicitado y se
*909 CONFIRMA la Resolución recurrida.
Notifíquese inmediatamente por correo electrónico, o teléfono o Fax y posteriormente por correo ordinario.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 35

. Apéndice XXII, páginas 134 y siguientes, peticionaria.

. Artículo II, Sección 11,1 L.P.R.A.

. Obra en autos Moción de 19 de mayo de 2009 de Fiscal Wanda Vázquez, solicitando adelantar la fecha de vista preliminar del co-acusado José L. Colón De Jesús, pautada para el 26 de mayo de 2009, para verse en conjunto con los restantes co-acusados en la vista preliminar pautada para el 22 de mayo de 2009. Anejo II, pág. 19, peticionaria. También Moción de Conflicto de la Sociedad para Asistencia Legal, informando no poder asumir representación legal de co-acusados José Cruz Ortiz, Jorge L. Reyes Santiago y José L. Colón De Jesús, por conflicto de intereses. (Anejo III, peticionaria, págs. 20-21).

. El 16 de junio de 2009, el Ministerio Público presentó moción solicitando cambio de fecha de vista preliminar, indicando que el acusado Luis J. Hernández Cruz c/p Bebito, tenía vista preliminar pautada para el 19 de junio de 2009, en la Sala 405, y solicitó dicha vista se viera en conjunto con los restantes co-acusados asignados a la Sala 405 de vistas preliminares, el 3 de agosto de 2009.

. Existe conflicto con la información de lo acontecido en la vista preliminar pautada para el 14 de agosto de 2009. En el escrito del ministerio Público “Moción en Oposición a Petición de Hábeas Corpus", Anejo XX, página 129, en la relación fáctica se señala que en el cuarto señalamiento pautado para el 14 de agosto de 2009 se continuó con el desfile de la prueba con el mismo testigo. Al terminar el día y no haberse concluido el testimonio del testigo comenzó nuevamente la lucha por seleccionar una fecha hábil para la continuación de la vista y el conflicto de calendario de los abogados de defensa. Con la objeción de la Fiscalía quedó reseñalado el caso para los días 10 y 11 de septiembre de 2009. Por otra parte, en la Resolución del 12 de noviembre de 2009, Anejo XXII, pág. 136, el Hon. Juez Delgado indica que la vista del 14 de agosto de 2009 no se celebró por razón de que el imputado no estuvo presente. No tenemos en apelación el beneficio de la Minuta de las incidencias de la vista del 14 de agosto de 2009, para dirimir el conflicto de información de lo que efectivamente sucedió en esta fecha.

. La Fiscalía reitera en su escrito de Certiorari y en su Moción en Oposición a Hábeas Corpus que en estas vistas siempre le reiteró al Tribunal su solicitud de que los reseñalamientos fuesen en fecha cercan, ya que el término de 6 meses de detención preventiva seguía corriendo, pero la defensa era consistente en reiterar sus conflictos de calendarios con otros casos y asuntos que requerían su atención. (Anejo XX, pág. 126, peticionaria).

. La Fiscalía volvió a reiterar en su escrito de Oposición a Hábeas Corpus que le solicitó a la Juez que la fecha de reseñalamiento fuese bien cercana, pues el término de seis meses seguía corriendo, pero la defensa consistentemente manifestaba problemas de calendario para seleccionar una fecha hábil. (Anejo XX, página 129, peticionaria).

. El Ministerio Público, tanto en su escrito de Certiorari como en su Moción de Oposición de Hábeas Corpus, reiteran su argumento que la fiscalía estuvo preparada en todo momento y presionando para que se aceleraran los señalamientos, pero que la defensa dilataba intencionalmente el proceso. Por ejemplo, plantea que a pesar de las advertencias de la Honorable Juez y de ser una fecha escogida previamente y aún cuando se citaba a las 8:30 A.M. algunos de los abogados llegaban tarde y se tenía que empezar a las 11:00 A.M. o más tarde. Que hubo ocasiones en que la Hon. Juez solicitó a las partes que pudiesen trabajar después de las 5:00 P.M. La Fiscalía estuvo dispuesta, pero la defensa no, por diferentes situaciones. (Anejo XX, página 129, peticionaria.

. El juicio en su fondo pautado para el 3 de diciembre de 2009, es 206 días con posterioridad al comienzo de la detención preventiva y 26 días en exceso al máximo de 180 días permitido por la Constitución del Estado Libre Asociado de Puerto Rico. Véase 1 L.P.R.A., Artículo II, Sección 11. En su parte pertinente, la disposición reza: “La detención preventiva antes del juicio no excederá de seis meses”.

. Existió una discrepancia sobre la razón de la tardanza del comienzo de la vista el 23 de octubre de 2009. El ministerio público indicó que el motivo fue la tardanza de los abogados de la defensa, mientras que la Leda. López Mulero aseguró que la verdadera razón fue que el testigo del ministerio público se encontraba en la corte federal y que por motivo de la explosión los únicos reos que se movilizaron ese día fueron los del caso que nos ocupa.

. Se trata de un dictamen emitido por sentencia, sin opinión del Tribunal Supremo. No obstante, hay una Opinión del Juez Asociado Negrón Fernández en la cual concurren el Juez Presidente Snyder y el Juez Asociado Sifre.

. Expresiones del Juez Asociado Negrón Fernández en la sentencia Sánchez v. González, supra, y Ruiz v. Alcaide, supra, constituyen la jurisprudencia del Tribunal Supremo sobre la cual descansa principalmente la posición de la fiscalía. Por ello destacamos la controversia allí resuelta en cuanto a la detención preventiva.

. Véase Sentencia del 2 de noviembre de 2009, en caso KLCE-2009-01655. Dicha Sentencia ha sido objeto de una Petición de Certiorari y una Moción en Auxilio de Jurisdicción presentadas por el ministerio público ante el Tribunal Supremo en el caso CC2009-0967.

. Para ello recurrimos a la resolución recurrida de 12 de noviembre de 2009, (anejo XXII), la Moción de Oposición de Hábeas Corpus presentada por el ministerio público el 12 de noviembre de 2009 (anejo XX) y las Mociones, Ordenes y notas del magistrado que obran en el apéndice.

. Nos referimos a las vistas preliminares celebradas en las sesiones de los días, 3 de agosto, 14 de agosto, 10 de septiembre, 11 de septiembre, 30 de septiembre, 16 de octubre y 23 de octubre, todas del año 2009.